IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ABDUL-HAQQ SHABAZZ,

    Plaintiff;

v.

DELAWARE DEPARTMENT OF

CORRECTION, et al.,

    Defendants.

Civil Action No. 16-570-RGA

## MEMORANDUM OPINION

Matthew G. Summers, Brittany M. Giusini, and William J. Burton, BALLARD SPAHR LLP, Wilmington, DE. Attorneys for Plaintiff.

Adria B. Martinelli and Allison J. McCowan, DEPUTY ATTORNEYS GENERAL, Delaware Department of Justice, Wilmington, DE. Attorneys for Defendants.

November , 2019


ANDREWS, U.S. DISTRICT JUDGE:

Currently before me is Plaintiff Abdul-Haqq Shabazz's Motion for Leave to File Third Amended Complaint (D.I. 104). Defendants oppose this motion. (D.I. 110). Plaintiff has also renewed his claim in the form of a new complaint. (1:19-cv-01909-UNA, D.I. 1). For the reasons set forth herein, Plaintiff's motion is denied as to the Third Amended Complaint and Plaintiff is given leave to amend his complaint in light of this opinion.

I.  BACKGROUND

Plaintiff Abdul-Haqq Shabazz, an inmate at James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed his initial complaint *pro se* on June 30, 2016. (D.I. 2).[1] Plaintiff has suffered from diagnosed glaucoma and cataracts in both of his eyes for the past fourteen to nineteen years. (D.I. 104-1 at ¶ 15). When Plaintiff filed his original complaint, he was completely blind in his left eye and his vision was severely impaired in his right eye. (D.I. 105 at 2). After various appointments and interactions with physicians and other medical personnel, Plaintiff received glaucoma surgery on October 9, 2017. (D.I. 104-1 at 4). On April 13, 2019, Plaintiff became completely and irreversibly blind in his right eye. (*Id.* at ¶ 49).

After being appointed counsel, Plaintiff filed a First Amended Complaint on April 7, 2017, which added Connections Community Support Programs as a defendant and stated a cause of action under 42 U.S.C. § 1983 for deliberate indifference and cruel and unusual punishment based upon Connections' and the Department of Corrections' failure to provide Plaintiff with constitutionally required medical care treating his glaucoma. (D.I. 22). Plaintiff then filed a Second Amended Complaint on May 12, 2017. (D.I. 27).

---

[1] All docket item citations are in reference to 1:16-cv-00570-RGA unless otherwise indicated.

I dismissed Plaintiff's Second Amended Complaint because Plaintiff's allegations lacked sufficient detail about a particular policy, practice, or custom maintained by Defendant that caused Plaintiff's injury. (D.I. 57 at 1). In his Second Amended Complaint, Plaintiff asserted causes of action under the ADA and Rehabilitation Act against two individuals in their official capacities, who could not be subject to claims for damages under 42 U.S.C. § 1983. (D.I. 27). At that time, I was inclined to give Plaintiff another opportunity to state his claim with sufficient factual detail to "allow the court the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. I granted Plaintiff leave to amend his complaint, with a deadline of December 15, 2017. (D.I. 58).

Well past the original deadline, Plaintiff now requests leave to file a third amended complaint. (D.I. 104). Plaintiff argues that his current state of complete and irreversible blindness has given rise to new claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. (D.I. 105 at 1). These claims are related to the claims that Plaintiff previously asserted.

In his proposed Third Amended Complaint and in his separately filed action, Plaintiff seeks to add as a defendant Vincent Carr ("Dr. Carr"), the former medical director of the Delaware Department of Corrections who oversaw decisions related to Plaintiff's treatment. (D.I. 104-1; 1:19-cv-01909-UNA, D.I. 1). Plaintiff asserts an Eighth Amendment claim against Dr. Carr individually under Section 1983, alleging effective denial of surgical treatment leading to the loss of eyesight. (D.I. 104-1). Plaintiff alleges that Dr. Carr was deliberately indifferent to Plaintiff's serious medical needs and contributed to delays in Plaintiff's medical treatment from 2012 to July 2018. (*Id.* at ¶¶ 12-14). Plaintiff describes meeting with Dr. Carr in 2016 and receiving inadequate attention to his medical needs from Dr. Carr after that meeting. (*Id.* at ¶ 67).

Plaintiff further alleges that Dr. Carr instituted and enforced policies and procedures that caused Plaintiff to go completely and irreversibly blind in both eyes. (*Id.* at ¶¶ 74-78).

Defendants oppose the addition of Dr. Carr as a new defendant. (D.I. 110 at 1 n.1).

## II. LEGAL STANDARD

In general, Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. The rule provides that leave to amend should be given freely "when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15(a) "embodies a liberal approach to pleading," and "leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). The relevant equitable considerations include undue delay or bad faith by the party seeking leave to amend, prejudice to the non-moving party, futility of the proposed amendments, and judicial economy. *See Mullin v. Balicki*, 875 F.3d 140, 149-50 (3d Cir. 2017). Prejudice to the non-moving party is the "touchstone" inquiry for the denial of leave to amend. *Id.* at 155.

In this case, another rule is applicable. Federal Rule of Civil Procedure 16(b)(4) requires district courts to impose a schedule which "may be modified only for good cause and with the judge's consent." Since Plaintiff seeks to amend a pleading after the scheduling order deadline for pleading amendments has passed, I will first apply Rule 16(b). *See In re Fisker Auto. Holdings, Inc.*, 2018 WL 5113964, at *3 (D. Del. Oct. 12, 2018) ("When a party seeks to amend a pleading after the scheduling order's deadline for pleading amendments has passed, the court will apply Rule 16(b) as opposed to Rule 15(a)."); *see also Eastern Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (approving district court's application of the good cause standard in Rule 16(b) to motion to amend pleadings after amendment deadline).

Pursuant to Rule 16, "'[g]ood cause' exists when the party seeking leave to amend exercised reasonable diligence in trying to comply with the scheduling order." *In re Fisker*, 2018 WL 5113964, at *4; *see also WebXchange Inc. v. Dell Inc.*, 2010 WL 256547, at *2 (D. Del. Jan. 20, 2010). "In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835, at *4 (D. Del. May 21, 2009).

The element of good cause "requires the movant to demonstrate that, despite diligence, the proposed claims could not have been reasonably sought in a timely manner." *Venetec Int'l v. Nexus Med.*, 541 F. Supp. 2d 612, 618 (D. Del. 2010). The focus of the "good cause" inquiry is, therefore, on diligence of the moving party, rather than on prejudice, futility, bad faith, or any of the other Rule 15 factors. *See GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, 2016 WL 7319670 (D. Del. Dec. 15, 2016).

### III. DISCUSSION

Plaintiff alleges that despite his numerous requests for medical attention and doctors' recommendations, his treatment was delayed to the point of denial. (D.I. 104-1). Defendants argue that Plaintiff's claim is untimely, barred by the two-year statute of limitations that applies to claims brought under 42 U.S.C. § 1983.

Generally, the statute of limitations begins to run when a plaintiff knew or had reason to know of the injury. *See United States v. Kubrick*, 444 U.S. 111 (1979). For Section 1983 claims, federal courts apply the statute of limitations governing personal injury actions in the state in which the cause of action arose. *Owens v. Okure*, 488 U.S. 235, 240-41 (1989); *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003); *see also Vickers v. Childs*, 530 F. App'x 104,

105 (3d Cir. 2013). In Delaware, the applicable statute of limitations is two years. 10 *Del. C.* § 8119.

State law also provides the statute of limitations tolling rules. *Wilson v. Garcia*, 471 U.S. 261, 275 (1985); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975). Tolling interrupts the statute of limitations after it has begun to run, but does not determine when it begins to run, in other words, the time of accrual. In Section 1983 suits and other suits under federal law, the determination of the date of accrual is a matter of federal common law rather than state law. *See Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir. 1988).

Here, Plaintiff asserts that his injury was unknown to him until he went completely and irreversibly blind in his right eye on April 13, 2019. (D.I. 105 at 2). Plaintiff argues that the statute of limitations did not begin to run until April 13, 2019 and his claim, filed well within two years, is thus not time-barred. (*Id.*). Plaintiff contends, alternatively, that the continuing violation doctrine applies to his claim, such that his claim against Dr. Carr for conduct falling outside the limitations period is not time-barred. (D.I. 111 at 3). Plaintiff asserts that Dr. Carr's continuing course of conduct ceased when Plaintiff received the required glaucoma surgery on October 9, 2017. (*Id.* at 4). Plaintiff argues that under the continuing violations doctrine, the limitations period did not begin to run until October 9, 2017 and will not expire until October 9, 2019. (*Id.*).

Although the statute of limitations generally begins to run when the plaintiff becomes aware of the injury, "under the continuing violation doctrine, a plaintiff can pursue claims based on conduct that began prior to the limitations period, if the plaintiff can show that the conduct is part of an ongoing practice." *Dobrich v. Wells*, 380 F.Supp.2d 366, 375 (D. Del. 2005); *see also Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1992); *Mullin*, 875 F.3d at 159 ("The accrual of the claim is […] tied […] also to the

5

unconstitutional act by the prison official that gives rise to the claim."); *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) ("A series of wrongful acts creates a series of claims."); *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 828 (11th Cir. 1999); *Kuhnle Bros, Inc., v. Cty. of Geauga*, 103 F.3d 516, 522-23 (6th Cir. 1997). Taking as true the facts that give rise to Plaintiff's claim that Defendants inflicted cruel and unusual punishment on Plaintiff by refusing to treat his condition, "the refusal continued for as long as the defendants had the power to do something about his condition." *Heard*, 253 F.3d at 318. "Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew." *Id.*

In *Jackson v. Taylor*, the Court concluded that the plaintiff's claims were not barred by the statute of limitations. 2010 LEXIS 76573, at *13 (D. Del. July 27, 2010). In that case, "Plaintiff allege[d] that Defendants failed to have Plaintiff undergo a scheduled biopsy for eight months after medical personnel found it necessary, and that despite knowledge of his diagnosis," the defendants continued not to provide Plaintiff with evaluation or treatment for his condition up to the time of trial. *Id.* The plaintiff in that case had alleged a "continuing constitutional violation," and thus his claims were not time-barred. *Id.*; *see also Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980) (reversing summary judgment and remanding, holding that "failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided").

The facts as alleged in the proposed complaint demonstrate that Plaintiff's injury began far earlier than April 13, 2019, the date on which Plaintiff found himself to be completely and irreversibly blind in both eyes. While it is true that until the date on which Plaintiff lost total eyesight he was unaware of the manner in which his injuries would culminate, Plaintiff knew or

should have known that he had an action to bring prior to that date. Plaintiff alleges improper medical supervision at JTVCC and unsatisfactory interactions with Dr. Carr dating back to his transfer to JTVCC in 2005. (D.I. 104-1 at ¶ 22). In fact, Plaintiff did bring such an action, as early as 2016. (D.I. 2).

The relevant inquiry is when Dr. Carr's continuing course of conduct finally ceased. *See Lavellee*, 611 F.2d at 1132; *Heard*, 253 F.3d at 318; *Neel v. Rehberg*, 577 F.2d 262, 263-64 (5th Cir. 1978); *Montin v. Estate of Johnson*, 636 F.3d 409 (8th Cir. 2011). Plaintiff received glaucoma surgery on October 8, 2017 (D.I. 104-1 at ¶ 48). In his recitation of facts leading up to the surgery, Plaintiff describes various doctors' recommendations and requests for treatment being ignored. (DI 104-1 at ¶¶ 22, 23, 26). For example, Plaintiff describes not being "permitted" to undergo glaucoma surgery in 2012. (D.I. 104-1 at ¶ 26). But it is unclear who bears responsibility for these decisions. The sole instance in which Dr. Carr's conduct is specifically mentioned is in 2016, when Dr. Carr met with Plaintiff "to discuss his medical condition" and thereafter failed either to "g[e]t back to him," or, alternatively, told him "his accommodation was glasses." (D.I. 104-1 at ¶ 67).

For the course of conduct to be "continuing," such that the statute of limitations does not bar Plaintiff's claim, Dr. Carr needs to have been involved in some capacity in the acts and omissions alleged. Based on the pleadings before me, it is unclear what Dr. Carr's role was regarding the delay and denial of treatment during the period of Plaintiff's incarceration at JTVCC after the meeting in 2016. Dr. Carr was the "medical director" of the Department of Correction, and Plaintiff describes his responsibilities as coordination, supervision, review, and "overall responsibility." (*Id.* at ¶ 13). The proposed complaint does not allege any facts to show that Dr. Carr was in fact involved in and thus potentially responsible for the pattern of denial of

7

medical treatment that is alleged by Plaintiff. If Plaintiff can demonstrate that Dr. Carr was involved in these acts and omissions, he is given leave to amend the complaint to include such specific facts.