IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ABDUL-HAQQ SHABAZZ,

    Plaintiff;

v.

DELAWARE DEPARTMENT OF
CORRECTION, et al.,

    Defendants.

Civil Action No. 16-570-RGA

MEMORANDUM OPINION

Matthew G. Summers, Brittany M. Giusini, and William J. Burton, BALLARD SPAHR LLP, Wilmington, DE., attorneys for Plaintiff.

Stephen M. Ferguson, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE, attorney for Defendants.

March 2, 2020


**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. (D.I. 130). I have reviewed the parties' briefing. (D.I. 131, 136, 137). Because Plaintiff does not satisfy the multi-factor test for granting preliminary injunctive relief, I will deny Plaintiff's motion.

## I. BACKGROUND

Plaintiff is currently incarcerated at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware. In the present motion for a temporary restraining order and preliminary injunction, Plaintiff has requested that Defendants be restrained from transferring Plaintiff from JTVCC to the Sussex Correctional Institution ("SCI") in Georgetown, Delaware, and restrained from continuing violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

This motion arises in the context of Plaintiff's separate claim for injunctive and compensatory relief related to harm resulting from Defendants' failure to provide adequate medical care and reasonable accommodations, and discrimination against Plaintiff based on his disability. (D.I. 117). Defendants have moved to dismiss Plaintiff's Third Amended Complaint, the briefing for which is expected to be complete in early March, 2020.

## II. LEGAL STANDARD

Preliminary injunctive relief is extraordinary in nature and should issue in only limited circumstances. *See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994). Issuance of such relief is at the discretion of the trial judge. A party seeking a preliminary injunction must satisfy the traditional four-factor test: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that

granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Child Evangelism Fellowship of N.J. Inc. v. Stafford Twp. Sch. Dist.*, 386 F.3d 514, 524 (3d Cir. 2004).

## III. DISCUSSION

### a. Likelihood of Success on the Merits

Plaintiff does not have a strong likelihood of success in demonstrating that his transfer to SCI violates the ADA or the Rehabilitation Act. Under the ADA, "[p]ublic entities shall ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals. Unless it is appropriate to make an exception, a public entity . . . [s]hall not deprive inmates or detainees with disabilities of visitation with family members by placing them in distant facilities where they would not otherwise be housed." 28 C.F.R. § 35.152(b)(2)(ii).

The law also states that prison officials require broad discretionary authority, as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Accordingly, prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 527 (1979). The federal courts are not overseers of the day-to-day management of prisons. *See Wolff*, 418 U.S. at 566; *see also Bagwell v. Prince*, 1996 WL 470723, at *2 (Del. Aug. 9, 1996) ("Placement of inmates within the prison system is within the wide spectrum of discretionary actions that traditionally have been the business of prison administrators, rather than of the courts.") (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). "A prisoner has no constitutional

2

right to be housed within any particular correctional facility." *Walls v. Taylor*, 2004 WL 906550, at *1 (Del. Apr. 26, 2004).

Here, there are legitimate, specific reasons for Plaintiff's transfer to SCI. Defendants have averred that being housed in the Merit building at SCI will provide more security for Plaintiff and his belongings and that he will receive more personalized attention to his needs. (*Id.* at 4). The federal regulations provide for an exception to the general requirements of ADA provision § 35.152 if the specific situation warrants different treatment. In the underlying litigation, Plaintiff has asserted that his treatment at JTVCC is inadequate and that reasonable accommodations for his disability are being withheld. *See* D.I. 117. Defendants have averred that "programs designed to facilitate rehabilitative efforts," along with educational and spiritual/religious opportunities and access to the law library will all be available to Plaintiff at SCI. (D.I. 136 at 4). Defendants also state that upon Plaintiff's transfer to SCI, the Department of Correction "will promptly identify and train inmate caregivers" to assist Plaintiff with various tasks. (*Id.*) Plaintiff will receive his meals in a manner that accommodates his disability. (*Id.*). While video conferencing for a blind inmate may be a poor replacement for regular in-person visits, I also note Defendants' intended provision of extended visitation sessions for Plaintiff's family. (*Id.* at 5).

I appreciate the increased difficulty that Plaintiff's aged mother and brother would face in visiting Plaintiff at SCI. Currently, Plaintiff's mother and brother travel 45 miles to visit him JTVCC, which Plaintiff avers takes approximately forty-nine minutes. (D.I. 131 at 12). According to Plaintiff, a transfer to SCI would require Plaintiff's family to travel 95 miles from their home, which would take approximately one hour and thirty-seven minutes by car. (*Id.*). This doubles the length of time it would take for Plaintiff's family to visit him, placing a relative

burden on Plaintiff's family and on the elderly Plaintiff, who has an interest in spending time with his family. While I understand this hardship, I acknowledge the Third Circuit's consideration of a similar argument in *Rivera v. Federal Bureau of Prisons*, in which a prisoner argued that prison officials improperly denied his requests to transfer to a facility closer to his mother, who was in poor health and had difficulty visiting him. 197 F. App'x 169, 169 (3d Cir. 2006). While the facts of this case are different, in that Plaintiff is seeking to stop a transfer that would move him further from his family, I note the Court's holding that prisoners do not have a liberty interest in being assigned to the facility of their choice. *Id.* (citing *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983)); *see also Beshaw v. Fenton*, 635 F.2d 239, 246 (3d Cir. 1980) ("Although we are concerned when prisoners are transferred under such circumstances, we are aware of no authority suggesting that a transfer to a facility not easily accessible to a prisoner's relatives and acquaintances necessarily implicates liberty interests protected by the Due Process Clause.").

SCI is also not a facility where Plaintiff "would not otherwise be housed." Transferring Plaintiff from JTVCC to SCI does not require a change to Plaintiff's security classification and the Department of Correction routinely transfers inmates among correctional facilities. (D.I. 136 at 10).

Viewing the decision to transfer Plaintiff in light of the broad discretion over housing decisions that is granted to prison administrators, and noting Defendants' statements of intention to provide accommodations at SCI for Plaintiff's disability and to alleviate the added visitation burden that a transfer would place on Plaintiff's family members, I do not find that Plaintiff's transfer to SCI would violate the ADA or Rehabilitation Act. Therefore, I do not find that Plaintiff has demonstrated a strong likelihood of success on the merits.

### b. Immediate and Irreparable Harm

Plaintiff has not demonstrated the likelihood of immediate and irreparable harm if he is moved to SCI. "The relevant inquiry is whether, at the time the injunctive relief is to be issued, the party seeking the injunction is in danger of suffering irreparable harm." The irreparable harm alleged must be actual and imminent, not merely speculative. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "[A] showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of *immediate* irreparable harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (internal quotations omitted). Moreover, "[t]he 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (internal citation omitted). "The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

The cases cited by Plaintiff with regard to irreparable harm appear to support the claims of the underlying litigation regarding Plaintiff's alleged denial of benefits and discrimination as a result of his blindness while housed at JTVCC. They do not, however, support a showing that transfer to SCI would result in immediate and irreparable harm. Plaintiff states, "Mr. Shabazz has satisfied the requirement for imminent and irreparable harm where he is at risk for serious bodily injury and potentially death as well as being completely shut out from the grievance and sick call slip processes." (D.I. 137 at 9). Plaintiff also alleges isolation from the rest of the prison population, exposure to and contraction of disease due to placement in the infirmary, physical injuries resulting from moving around without proper training and aids designed for blind

5

individuals, and the inability to fill out sick call slips and contact individuals who might advocate on his behalf. (D.I. 131 at 21-22). These risks and harms are alleged to result from Plaintiff's treatment at JTVCC.

The subject of this motion is to enjoin Plaintiff's transfer out of JTVCC, where these harms are alleged to be occurring. The inquiry here must thus focus on whether a failure to enjoin such a transfer would result in imminent and irreparable harm to Plaintiff. As such, allegations about poor treatment at JTVCC do not support Plaintiff's motion for a temporary restraining order. Plaintiff's treatment at JTVCC is the subject of a pending complaint (D.I. 117), for which parties' briefing is not yet complete.

Plaintiff also asserts that moving him from JTVCC to SCI will remove him from his social network, re-start the process of training and assistance by the Delaware Department of the Visually Impaired, and subject Plaintiff, who is blind, to a new facility that he is unable to visualize. (D.I. 131 at 22). Plaintiff has also generally alleged mental harm resulting from the move. (D.I. 137 at 9).

Plaintiff has alleged numerous facts suggesting that he faces continuing harm and injury due to a failure to provide reasonable accommodations for his disability at JTVCC, his isolation from other inmates, and his exposure to infection due to his placement in the JTVCC infirmary. (D.I. 131 at 22). Plaintiff has failed to set forth specific facts, however, demonstrating the likelihood of immediate and irreparable harm if he is moved to SCI. To the extent that Plaintiff alleges injuries experienced due to discrimination and denial of benefits, these are the subject of a pending complaint for which compensatory and punitive damages are sought. (D.I. 117 at ¶ 143).

6

Plaintiff will have no less access to medical care or accommodations related to his disability at SCI. (D.I. 136 at 11; *see Spengler v. LASD: Los Angeles County Jail*, 2017 WL 2468771 (C.D. Cal. June 5, 2017) (prisoner failed to demonstrate a likelihood of irreparable injury where he did not show that move to a different floor of the prison would not accommodate his ADA and medical needs)). At SCI, it appears likely that Plaintiff will instead receive forms of support for his disability that are not currently being provided at JTVCC. (D.I. 136 at 12). To the extent that Plaintiff's family is unable to visit him as frequently due to the transfer to a more distant facility, Defendants have offered extended in-person visitation time at SCI and video visits. (*Id.*). While I understand Plaintiff's wishes to remain among his established social network at JTVCC, I do not find that transferring him to a new environment where he will have greater accommodations for his disability and where he will not be held in isolation will cause irreparable immediate harm. As a result, I do not find that Plaintiff has satisfied the second factor of the preliminary injunction analysis.

### c. Balancing of Hardships and the Public Interest

When the government is the opposing party, the last two elements of injunctive relief are merged. *Minard Run Oil Co. v. United States Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011).

Plaintiff argues that the public interest would be served if injunctive relief is granted because the public has an interest in upholding the principle of equal rights for individuals with disabilities, in not denying moral assistance to disabled inmates, and in the laws being applied as written. (D.I. 131 at 24). Plaintiff contends that the balance of hardships moreover weighs in his favor, given that he is currently receiving "little to no accommodations" for his disability and seeks what he is entitled to receive under the ADA, "which can be provided by the DOC at little to no cost and with no security concerns." (*Id.* at 25). Plaintiff asserts that the hardship he faces

is severe. He is currently living in isolation exposed to health risks with little or no access to recreational activity; unable to communicate with his family and friends through letters; unable to participate in JTVCC's grievance process; unable to submit sick call slips; unable to document his living conditions; and unable to read incoming mail or respond to administrative requests. (*Id.*).

Again, Plaintiff's arguments are better suited to his underlying claims regarding discriminatory treatment and failure to make reasonable accommodations for his disability. I agree with Plaintiff that the public has an interest in ensuring that disabled inmates are not receiving discriminatory treatment. The hardships that Plaintiff outlines, however, are those that he is encountering at JTVCC. With respect to the motion to restrain Plaintiff's transfer to SCI, there is no evidence to suggest that he would continue to be excluded from programming or communication at SCI, and Defendants have articulated their commitment to providing various means of support and accommodation for Plaintiff's disability at SCI. Defendants have a compelling interest in regulating their correctional facilities and broad discretion to make housing decisions for inmates free from unwarranted federal court intervention in prison administration. For the foregoing reasons I do not find that the balance of the equities and public interest weigh in favor of injunctive relief.

## IV. CONCLUSION

For the reasons discussed above, I will deny Plaintiff's motion. An Order consistent with this memorandum opinion will be entered.