IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ABDUL-HAQQ SHABAZZ,

                Plaintiff;

                v.

DELAWARE DEPARTMENT OF
CORRECTION, et al.,

                Defendants.

Civil Action No. 16-570-RGA

MEMORANDUM OPINION

Matthew G. Summers, Brittany M. Giusini, and William J. Burton, BALLARD SPAHR LLP, Wilmington, DE., attorneys for Plaintiff.

Stephen M. Ferguson, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE, attorney for Defendants.

July 9, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendant Carr's Motion to Dismiss Plaintiff's Third Amended Complaint. (D.I. 122). I have reviewed the parties' briefing. (D.I. 122, 135, 149). For the reasons set forth herein, I will grant Defendant's motion.

## I.     BACKGROUND

Plaintiff Abdul-Haqq Shabazz, while an inmate at James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed his initial complaint *pro se* on June 30, 2016. (D.I. 2). Plaintiff has suffered from diagnosed glaucoma and cataracts in both of his eyes for the past fourteen to nineteen years. (D.I. 117 at ¶ 15). When Plaintiff filed his original complaint, he was completely blind in his left eye and his vision was severely impaired in his right eye. (D.I. 105 at 2). After various appointments and interactions with physicians and other medical personnel, Plaintiff received glaucoma surgery on October 9, 2017. (D.I. 117 at ¶ 3). On or about April 13, 2019, Plaintiff became completely and irreversibly blind in his right eye. (*Id.* at ¶¶ 3, 49).

After being appointed counsel, Plaintiff filed a First Amended Complaint on April 7, 2017, which added Connections Community Support Programs as a defendant and alleged a cause of action under 42 U.S.C. § 1983 for deliberate indifference and cruel and unusual punishment based upon Connections' and the Department of Correction's failure to provide Plaintiff with constitutionally required medical care treating his glaucoma. (D.I. 22). Plaintiff then filed a Second Amended Complaint on May 12, 2017. (D.I. 27).

I dismissed Plaintiff's Second Amended Complaint as to Defendant Connections Community Support Programs because Plaintiff's allegations lacked sufficient detail about a particular policy, practice, or custom maintained by Defendant that caused Plaintiff's injury. (D.I. 57 at 1). I gave Plaintiff another opportunity to state his claim with sufficient factual detail

to "allow the court the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. (D.I. 57 at 5).

In his Second Amended Complaint, Plaintiff also asserted causes of action under the ADA and Rehabilitation Act against two individuals in their official capacities (D.I. 27), who could not be subject to claims for damages under 42 U.S.C. § 1983. I dismissed the claims against those two individuals. (D.I. 82).

Plaintiff then requested leave to file another amended complaint. (D.I. 104; *see* D.I. 104-1). Plaintiff argued that his current state of complete and irreversible blindness had given rise to new claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. (D.I. 105 at 1). These claims were related to the claims that Plaintiff previously asserted. For the first time, Plaintiff sought to name Dr. Carr as a defendant. I denied the motion to file the proposed amended complaint as drafted (D.I. 114), but I granted Plaintiff leave to amend his complaint to allege specific facts "to show that Dr. Carr was in fact involved in and thus potentially responsible for the pattern of denial of medical treatment that is alleged by Plaintiff." (D.I. 113 at 7-8; D.I. 114).

Plaintiff revised his proposed amended complaint and filed the Third Amended Complaint. (D.I. 117). As filed, the Third Amended Complaint named three defendants: the Delaware Department of Correction, the Delaware Department of Education, and Dr. Vincent Carr. Dr. Carr is the former medical director of the Delaware Department of Correction.[1] He oversaw decisions related to Plaintiff's medical treatment. (*Id.*).

---

[1] The Delaware Department of Correction has four secure facilities, a men's prison in each of Delaware's three counties, and one women's prison. I infer from the Third Amended Complaint that, as "medical director," his responsibilities included at least the four secure facilities.

Plaintiff asserts one count against Dr. Carr individually – an Eighth Amendment claim under § 1983. In it, he alleges denial of surgical treatment leading to the loss of eyesight. (*Id.* at ¶ 96). Plaintiff alleges that Dr. Carr was deliberately indifferent to Plaintiff's serious medical needs and contributed to delays in Plaintiff's medical treatment from 2012 to July 2018. (*Id.* at ¶ 14). Plaintiff describes meeting with Dr. Carr in 2016 and receiving inadequate attention to his medical needs from Dr. Carr after that meeting. (*Id.* at ¶ 84). Plaintiff further alleges that Dr. Carr instituted and enforced policies and procedures that caused Plaintiff to go completely and irreversibly blind in both eyes. (*Id.* at ¶¶ 102-14).

Dr. Carr now seeks to dismiss this action against him, contending that Plaintiff fails to state a claim upon which relief can be granted. (D.I. 122).

## II.  LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual assumptions must be enough to raise a right to relief above the speculative level … on the assumption that the allegations in the complaint are true (even if doubtful in fact)."). There must also be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

4

line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### III. DISCUSSION

Dr. Carr argues that Plaintiff's § 1983 claim against him is barred by the two-year statute of limitations. The complaint describes a meeting on December 22, 2016, where Dr. "Carr met with Mr. Shabazz to discuss his medical condition. Dr. Carr told Mr. Shabazz he would get back to Mr. Shabazz. Dr. Carr never got back to him, or, instead, subsequently told Mr. Shabazz his accommodation was glasses." (D.I. 117 at ¶ 96; *see* D.I. 122 at 6). There are no specific allegations after that. Thus, the two-year limitations period poses a problem for Plaintiff's claim against Dr. Carr, since it was first raised on July 31, 2019. (D.I. 104).

Generally, the statute of limitations begins to run when a plaintiff knew or had reason to know of the injury. *See United States v. Kubrick*, 444 U.S. 111 (1979). For § 1983 claims, federal courts apply the statute of limitations governing personal injury actions in the state in which the cause of action arose. *Owens v. Okure*, 488 U.S. 235, 240-41 (1989); *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). In Delaware, the applicable statute of limitations is two years. 10 *Del. C.* § 8119.

State law also provides the statute of limitations tolling rules. *Wilson v. Garcia*, 471 U.S. 261, 275 (1985); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975). Tolling interrupts the statute of limitations after it has begun to run, but does not determine the date of accrual, that is, when it begins to run. In § 1983 suits and other suits under federal law, the determination of the date of accrual is a matter of federal common law rather than state law. *See Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir. 1988).

5

Although the statute of limitations generally begins to run when the plaintiff becomes aware of the injury, "under the continuing violation doctrine, a plaintiff can pursue claims based on conduct that began prior to the limitations period, if the plaintiff can show that the conduct is part of an ongoing practice." *Dobrich v. Walls*, 380 F. Supp. 2d 366, 375 (D. Del. 2005); *see also Brenner v. Local 514, United. Bhd of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1992); *Mullin v. Balicki*, 875 F.3d 140, 159 (3d Cir. 2017) ("The accrual of the claim is . . . tied . . . also to the unconstitutional act by the prison official that gives rise to the claim."). The focus of the continuing violations doctrine is on the affirmative acts of the defendant[]." *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001) (internal quotation and citation omitted). For present purposes, *Cowell* best states the significance of the continuing violation doctrine to this case: "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Id.* at 292.

In my last opinion on this subject in this case, I found, "The sole instance in which Dr. Carr's conduct is specifically mentioned is in 2016, when Dr. Carr met with Plaintiff 'to discuss his medical condition . . . .'" (*Id.*). I previously noted, "The relevant inquiry is when Dr. Carr's continuing course of conduct finally ceased." (D.I. 113). That is the inquiry before me now. Stated differently, I need to determine the date of the last act of Dr. Carr that evidences the continuing practice.

As before, the sole instance in which Dr. Carr's conduct is specifically mentioned is in 2016, when Dr. Carr met with Plaintiff "to discuss his medical condition" and thereafter failed either to "g[e]t back to him," or, alternatively, told him "his accommodation was glasses." (D.I.

6

117 at ¶ 96). The complaint does not allege that Dr. Carr bore responsibility for the decision not to allow Plaintiff to undergo glaucoma surgery in 2012, which likely resulted in the necessity of further surgical procedures and may have contributed substantially to the loss of his eyesight later on. *See id.* at ¶ 26. The remainder of the allegations, including those offered for the first time in the Third Amended Complaint, focus instead on Dr. Carr's general responsibilities when he was Department of Correction medical director overseeing and supervising the medical treatment of all inmates. *See id.* at ¶¶ 64-68, 74-80, 95, 97.

Liability in a civil rights action cannot be based on respondeat superior alone and defendants in such actions must be alleged to have had personal involvement in the wrongs complained of. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* at 1208.

In *Jetter v. Beard*, the Third Circuit affirmed the dismissal of a prisoner's § 1983 action where the plaintiff failed to allege facts to support the conclusion that the supervisory defendants had personal involvement in the medical treatment. 130 F. App'x 523, 526 (3d Cir. 2005). The Court explained, "Personal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them." *Id.* at 526 (citing *Rode*, 845 F.2d at 1207). There, the plaintiff simply alleged that the officials violated his Eighth Amendment rights because they "knew or should reasonably have known" that the prison doctor's actions would cause unnecessary pain and further injury. *Id.* at 525.

In *Brown v. Deparlos*, the prisoner similarly failed to plead sufficient facts to demonstrate personal involvement by a supervisory prison doctor for alleged inadequate medical care. 492 F. App'x 211, 214-15 (3d Cir. 2012). Nothing in the plaintiff's complaint pleaded

7

personal involvement by the supervisor-doctor in the provision of inadequate medical care. *Id.* at 214. And the defendant's supervisory position alone was not enough to attribute liability in a § 1983 action. *Id.* at 214-15.

In contrast to *Jetter* and *Brown*, the Court in *Jackson v. Taylor* concluded that the plaintiff had alleged a continuing constitutional violation and his § 1983 claim was thus not time-barred. 2010 WL 2998915, at *4 (D. Del. July 27, 2010). In that case, the plaintiff alleged that defendants failed to have plaintiff undergo a scheduled biopsy for eight months after medical personnel found it necessary. *Id.* Up to the date of the court's disposition, the defendants failed to provide the plaintiff with evaluation of or treatment for his condition. *Id.*

Plaintiff cites *Victorious v. Lanigan* – a case in which the court considered issues regarding the handling of inmate legal mail – for the proposition that less detailed allegations of personal involvement than those submitted by Plaintiff are sufficient to state a claim for relief. 2016 WL 2981759 (D. N.J. May 23, 2016). The action complained of in *Lanigan* was the prison official defendants' failure to remedy misconduct after not only acknowledging the plaintiff's grievance but also ensuring that a response to the grievance was forthcoming. *Id.* at *7. For some defendants, the court denied the motion to dismiss § 1983 claims for lack of personal involvement, explaining that because those defendants failed to redress an ongoing problem of which they were aware and had pledged to at least investigate, plaintiff's claims "appear[ed] to implicate the type of supervisory liability premised on knowledge of and acquiescence in a pattern or practice of constitutional violations." *Id*. The Court, however, did grant the motion to dismiss of other supervisor-defendants against whom, for example, the plaintiff alleged only that he submitted a grievance pertaining to his outgoing legal mail and received a "generic response" from one of the defendant's staff members. *Id.* at *8. This pleading was insufficient to suggest

8

that this defendant had contemporaneous notice of the pattern of violations committed by subordinates and failed to take corrective action. *Id.* And the plaintiff's conclusory allegation that each supervisor defendant had "direct knowledge of plaintiff's legal mail issues" was insufficient, standing alone, to establish personal involvement in the alleged violations. *Id.*

Plaintiff offers several factual allegations in an attempt to establish a continuing course of conduct and Dr. Carr's personal involvement in the denial of medical care to Plaintiff such that the statute of limitations was extended, and Plaintiff's claim is not time-barred. *See, e.g.*, D.I. 117 at ¶¶ 64-92. Plaintiff alleges that Dr. Carr made rounds at JTVCC's infirmary observing offenders admitted for medical reasons five days a week, a period of time which included Plaintiff being housed in the infirmary on at least five separate occasions. (*Id.* at ¶¶ 64-66). Plaintiff also alleges that he filed several grievances related to his medical condition during the time that Dr. Carr was a member of the Healthcare Advisory Committee, which met at least quarterly to discuss healthcare services and offender grievances. (*Id.* at ¶¶ 69, 72). Plaintiff alleges that through Dr. Carr's involvement on this committee, he personally knew that Plaintiff was not being provided minimally adequate medical care and the treatment necessary for his conditions and was thus personally involved in the delay of medical treatment to Plaintiff. (*Id.* at ¶ 72).

As medical director of the Department of Correction from approximately 2012 to June 2017, Plaintiff alleges that Dr. Carr personally reviewed the cases of all inmates, including Plaintiff, who were admitted or transferred to acute care hospitals. (*Id.* at ¶ 76). Plaintiff alleges that despite Dr. Carr's personal knowledge of the inadequate medical care Plaintiff was receiving, evidenced in his medical records, and Dr. Carr's authority to approve medical treatment, Dr. Carr failed to act, thereby establishing his personal involvement in the delay of

Plaintiff's medical care. (*Id.* at ¶ 80). Similarly, the amended complaint alleges that Dr. Carr had full access to Plaintiff's sick calls, physicals, scheduling, and medical inquiries, and was able to view Plaintiff's "sick call triages, nursing protocols, intake screenings, medical administration and transfers," but did nothing. (*Id.* at ¶¶ 81-83).

The allegations regarding Dr. Carr's supervisory role in all Department of Correction medical care are insufficient for Plaintiff to state a § 1983 claim. The amended complaint alleges that Dr. Carr personally met with Plaintiff on December 22, 2016, to discuss his medical condition. Unlike *Victorious*, 2016 WL 2981759, at *7, in which the Court found that the defendants had failed to redress an ongoing problem of which they were on notice and had promised to investigate, essentially ignoring the plaintiff and his concerns altogether, Plaintiff received glaucoma surgery on October 9, 2017, after receiving a plethora of consultations and non-surgical treatment recommendations from various doctors in 2015 and 2016. (D.I. 117 at ¶¶ 48, 77).

This case is also distinguishable from *Jackson v. Taylor*, 2010 WL 2998915, at *4, in which defendants denied the plaintiff prisoner treatment or any form of medical testing or intervention for at least eight months after medical personnel found testing necessary. Although Plaintiff here filed emergency medical grievances on June 2, 2016, and on April 30, 2017, both of which he alleges were discussed during Healthcare Advisory Committee meetings and which failed to result in adequate medical treatment, Plaintiff does not plead sufficient facts to suggest that Dr. Carr was personally responsible for this lack of treatment. (D.I. 117 at ¶¶ 69-72).

For the course of conduct to be "continuing," such that the statute of limitations does not bar Plaintiff's claim, Dr. Carr needs to have been involved in some capacity in the acts and omissions alleged. *See Rode*, 845 F.2d at 1207-08. Here, the facts are not sufficiently pleaded to

hold Dr. Carr liable under a theory of supervisory liability. Under this theory, for § 1983 claims, to allege "facts showing personal involvement of the defendant," a plaintiff must show that the defendant

> expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion other than the one that actually produced the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were the 'moving force' behind the harm suffered by plaintiff.

*Lane v. Phelps*, 800 F. Supp. 2d 646, 650 (D. Del. 2011). I construe the allegations in the complaint, including the inferences from those allegations, as true. Even so, Plaintiff's complaint does not allege that Dr. Carr was the "moving force" behind any delay and deliberate indifference to Plaintiff's medical treatment and concerns.[2]

The allegations of events and acts occurring after the last personal involvement Dr. Carr had with Plaintiff on December 22, 2016, including Dr. Carr's general knowledge of Plaintiff's condition and access to Plaintiff's medical file as the DOC medical director, are insufficient to establish that Dr. Carr was personally involved in the violations. *See Brown*, 492 F. App'x at 214. Plaintiff has not alleged facts showing that Dr. Carr personally received and reviewed Plaintiff's April 2017 grievance regarding his medical care that he filed with the Healthcare Advisory Committee. *See Victorious*, 2016 WL 2981759, at *8. Even if Dr. Carr had "direct knowledge" of Plaintiff's grievance, this is insufficient, standing alone, to establish personal

---

[2] Dr. Carr made rounds of JTVCC's infirmary on at least five occasions during which Plaintiff was housed there. Plaintiff argues that these allegations establish Dr. Carr's personal involvement in Plaintiff's treatment from at least March 25, 2013 until October 14, 2016. (D.I. 135 at 5). But this period of time does not fall after the December 2016 meeting between Plaintiff and Dr. Carr and therefore does not aid Plaintiff in establishing continuing violations after December 2016. I also note that Plaintiff offers no facts to show that Dr. Carr's inattention to Plaintiff during rounds is related to Plaintiff's vision issues. (D.I. 117 at ¶ 66) (not stating why Plaintiff was in the infirmary).

involvement in the alleged violations. *See id*. Plaintiff's general allegations about Dr. Carr's service on the Healthcare Advisory Committee similarly fail to establish personal involvement. *See* D.I. 117 at ¶¶ 69, 72; *Victorious*, 2016 WL 2981759, at *8.

The amended complaint does not allege facts that show that after December 22, 2016, Dr. Carr was personally involved in or responsible for the pattern of denial of medical treatment that is alleged by Plaintiff. As such, Plaintiff's experiences after his meeting with Dr. Carr are not affirmative acts contemplated by the continuing violations doctrine. Because the last actionable act was alleged to have taken place on December 22, 2016, any claim brought against Dr. Carr after December 22, 2018, is time-barred and must be dismissed. *See McCreary v. Redev. Auth. of the City of Erie*, 427 F. App'x 211, 216 (3d Cir. 2011) (plaintiff in § 1983 case could not rely on continuing violation doctrine where last act did not occur within the statute of limitations period).

Because I find the claim against Dr. Carr to be time-barred, I need not reach the question of whether Plaintiff's § 1983 action states a claim for deliberate indifference against Dr. Carr.[3]

### IV. CONCLUSION

For the foregoing reasons, I will grant Defendant Carr's motion to dismiss. An accompanying order will be entered.

---

[3] The Third Amended Complaint does not make clear what the December 22, 2016 meeting was supposed to be. Plaintiff does not allege that the meeting was for the purpose of treatment. The only hint is the alternative allegation that Dr. Carr "subsequently told Mr. Shabazz his accommodation was glasses." (D.I. 117 at ¶ 96). It appears thus that this meeting was not about treatment but about accommodation.